UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHUCHU YAO,

Petitioner,

v.

JAMES JANECHA, WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

Case No. 5:26-cv-04917-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

**A# 216-871-100**

Chuchu Yao ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. Dkt. No. 1. The Court has considered the Petition and subsequent submissions of both parties.

## I. Background

Petitioner is a native and citizen of the People's Republic of China. Dkt. No. 1, Petition ¶ 26. She was born in 1996, first entered the United States in 2014, and has lived in the United States for twelve years. *Id.* She was inspected and admitted as an F-1 nonimmigrant student authorized to remain for the duration of status. *Id.* Respondents' official records reflect that

Petitioner's most recent admission was on January 9, 2018, class of admission "F1". *Id.*; Dkt. No. 1-5 at 4.[1] Petitioner completed her bachelor's degree in business administration at Arizona State University in August 2018. Petition ¶ 27. Petitioner's authorization pursuant to the F1 visa "was completed on October 9, 2019." Dkt. No. 1-5 at 4. In March 2020, Petitioner filed a form I-589 Application for Asylum and Withholding of Removal with United States Citizenship and Immigration Services ("USCIS"), grounded in her religious beliefs and fear of persecution in China.[2] Petition ¶ 28. That application remains pending. *Id.*

USCIS granted Petitioner employment authorization, which is valid through December 2029. *Id.* ¶ 29. In March 2021, Petitioner was issued a social security number. *Id.* ¶¶ 1, 29 She pays taxes and co-owns a home in Ontario, California, at the address reflected on Respondents' official records. *Id.*

For more than six years, Petitioner has worked for the same employer in Los Angeles. *Id.* ¶ 30. Her employer is a medical spa that operates 23 locations; Petitioner manages its Los Angeles location, where she oversees approximately 34 employees. *Id.* ¶ 31. The founder of Petitioner's employer has known Petitioner for more than six years, has employed Petitioner throughout that period, and submitted a declaration attesting that Petitioner consistently demonstrates professionalism, reliability, and a strong work ethic; that if released, Petitioner will return immediately to her position at the company. *Id.* ¶ 32. Petitioner's aunt, a lawful permanent resident of the

---

[1] The Court uses the page numbers placed on the document by the electronic docketing system.

[2] In 2016, Petitioner converted to Christianity and since then has regularly participated in Christian worship. Petition ¶ 28. In December 2019, her grandmother was arrested by authorities in China, and Petitioner states she was warned not to return to China. *Id.*

United States, also submitted a declaration offering to serve as Petitioner's co-sponsor and stating she will provide Petitioner a safe, stable place to stay at the home she and Petitioner purchased together. *Id.* ¶ 33. That home is the address on the DHS Form I-213. *Id.* Petitioner states she has no criminal history, a fact confirmed by the DHS Form I-213. *Id.* ¶ 34. Prior to August 4, 2026, Petitioner had never been detained. *Id.*

On August 4, 2026, Petitioner traveled to Los Angeles International Airport with her coworkers to board a domestic flight to Hawaii for a company trip organized by her employer. *Id.* ¶ 35. According to the Form I-213, Petitioner came to the attention of Enforcement and Removal Operations ("ERO") pursuant to a Transportation Security Administration ("TSA") lead referral. *Id.* ¶ 36; Dkt. No. 1-5 at 3. The Form I-213 states that Petitioner was arrested pursuant to a targeted enforcement operation. Dkt. No. 1-5 at 3. Petitioner states there was no warrant and no prior notice. Petition ¶¶ 36-39.

DHS served Petitioner with a Form I-862 Notice to Appear charging her as removable under 8 U.S.C. § 1227(a)(1)(C)(i) (failure to maintain the nonimmigrant status in which the noncitizen was admitted). *Id.* ¶ 40; Dkt. No. 1-5 at 3. Petitioner was transported to Adelanto, where she remains detained.

On August 25, 2026, an Immigration Judge ("IJ") denied bond on a checkbox form, stating "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." Petition ¶ 5; Dkt. No. 1-2 at 2. Petitioner is in removal proceedings; she is not subject to a final order of removal.

## II. Petition, Answer and Reply

The Petition alleges (1) violation of procedural due process in detaining Petitioner without pre-deprivation notice and a hearing; (2) violation of procedural due process by failure to provide an individualized bond

determination; and (3) violation of substantive due process in detaining Petitioner in the absence of circumstances demonstrating such confinement is necessary to prevent flight or protect the community. Petition ¶¶ 88-96.

In their Answer, Respondents state that as to the IJ's bond denial, Petitioner did not appeal to the BIA and thus failed to exhaust administrative remedies. Dkt. No. 7, Answer. Respondents explain that the IJ orally articulated the findings, which are memorialized in the recording of the bond hearing. *Id.* at 2, n.1. Regarding the due process claims, Respondents state that Petitioner overstayed her student visa, and because this is the first time Petitioner has ever been detained by ICE, Petitioner had no conditional liberty interest and consequently, any due process arguments may only be directed to the bond denial. Respondents cite caselaw explaining that the bond hearing provides sufficient safeguards to satisfy procedural due process. *Id.*

In reply, Petitioner emphasizes that she does not ask this Court to review the IJ's discretionary weighing of bond factors. *See* Dkt. No. 8. Petitioner states that her challenge is to the seizure on August 4, 2026, and alternatively, the constitutional adequacy of the subsequent procedures, neither of which can be adjudicated by the BIA. *Id.*

## III. Discussion

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a).

### A. Procedural Due Process

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The

protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

Evaluating Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Protected Liberty Interest**

The parties dispute whether Petitioner has a constitutionally protected liberty interest. Petitioner asserts that she does; Respondents disagree, arguing that as a visa overstay who was never granted any form of parole, Petitioner had no conditional liberty interest. When immigrants are detained by the government and then released conditionally, they have a liberty interest arising from "at least an implicit promise" that will be revoked only if they fail to live up to the parole conditions. *Pinchi v. Noem*, 792 F. Supp 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1973)). Respondents' position is that without a former detention, there has been no implicit promise of release and thus no liberty interest. But Respondents do not explain why the government's implicit promise not to revoke conditional release is the only ground upon which a protected liberty interest can be created. District courts in this circuit have reasoned that a protected liberty interest can be created by the government's affirmative decision not to detain a noncitizen who has lived at liberty for an extended

duration while their immigration case proceeds – notwithstanding the fact that he was subject to detention under 8 U.S.C. § 1226(a) (providing that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States."). *See Okeshov v. Santacruz*, No. 5:26-06187-AS, 2026 WL 3322141, at * 3 C.D. Cal. Nov. 3, 2026) (noncitizen who applied for asylum, received employment authorization, had no criminal record, and resided in United States for over six years before ICE detained him at a scheduled interview appointment with USCIS has the same liberty interest in his continued freedom as an individual initially detained, because the government made a decision not to detain him in the first place); *Oliveira-Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219, at * 5 (E.D. Cal. Oct. 1, 2026) (where "noncitizen builds a life in the United States after being granted entry pursuant to a visa—such that the government was not only aware of but approved of the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention when the government does not act to detain the noncitizen pursuant to 8 U.S.C. § 1227(a) and § 1226(a) within a reasonable time following the expiration of their nonimmigrant status"); *Orozco-Salazar v. Warden*, No. 5:26-cv-04555-KES, 2026 WL 2497334, at *2, 3 (C.D. Cal. Aug. 25, 2026) (collecting cases and finding liberty interest where noncitizen who had continued to reside in United States for three years after visa expired and formed strong community and family ties); *Tellez v U.S. General Atty*, No. 1:26-cv-05004 (EJD), 2026 WL 2654571, at * 2 (E.D. Cal. Sept 9, 2026) ("noncitizen who has lived at liberty for an extended duration while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process"); *Tello Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507, at *2 (W.D.

Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

Here, Petitioner was admitted into the United States with an F1 visa in January 2018 as a student, her authorization under that visa expired in October 2019, and she applied for asylum in March 2020. That application remains pending. During this time, the Government granted Petitioner work authorization, which is valid through December 2029, and she has been gainfully and successfully employed, paid taxes, and lived openly at an address known to Respondents. Respondents do not point to any change in circumstances demonstrating that Petitioner now presents a risk of danger or flight requiring detention. Although the government did not detain and then release Petitioner, the government made a decision not to detain her or otherwise impede her liberty for more than six years while exercising authority over her for purposes of adjudicating her application for asylum. Consequently, the government vested in Petitioner a liberty interest in her continued freedom. *See Okeshov*, 2026 WL 3322141, at *3 (collecting cases).

**2. Process Owed in Connection with Detention**

As Petitioner has a protected liberty interest in remaining out of custody, the question is what process she is owed before the government may take that liberty interest away. To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews* applies in immigration detention context, and

collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Regarding the first factor, as set forth above, Petitioner has a vested liberty interest in remaining free from detention, as she had for more than six years after she applied for asylum. With full knowledge of Petitioner's identity, immigration status, and home and work locations during the pendency of her asylum application, and having granted her employment authorization, Respondents continuously elected not to detain her while exercising authority over her legal proceedings. "This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" *Troykalo v. Armant*, EDCV 26-04875-KK-PD, 2026 WL 2602910, at * 4 (C.D. Cal. Sept. 2, 2026) (quoting *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004)). While Respondents' decision not to detain Petitioner was discretionary, *see* 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed her asylum application. *See id.* (collecting cases). Further, Respondents "deliberately acquiesced" to Petitioner's continued freedom by, among other things, affirmatively granting her employment authorization while her application was pending. *Id.* (quotation omitted) (cleaned up). Accordingly, Petitioner established a significant private interest.

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it

does not provide her with pre-deprivation process. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). As noted, the government permitted Petitioner to remain at liberty for over six years after she filed her asylum application and almost seven years after her visa expired.

The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate she does not pose a danger to the community or a flight risk, particularly in light of her employment record and support from her employer.

As to the third *Mathews* factor, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing both appear to be minimal. The only justification Respondents offer for Petitioner's detention is the expiration of her student visa; however, Respondents were aware of that visa expiration since October 2019.[3] Respondents do not identify any changed circumstances since then justifying Petitioner's detention. *See Pinchi*, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact the government "may

---

[3] Respondents have also been aware of Petitioner's pending asylum application since it was filed in March 2020.

believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). And, as the Court explained in *Troykalo*, "while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, 'those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.'" 2026 WL 2602910, at *6 (quoting *E.A. T.-B.,* 795 F Supp. 3d at 1324).

Because each of the *Mathews* factors favors Petitioner's pre-deprivation process claim, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

**3. Remedy**

Respondents do not discuss whether or how the due process violation resulting from the absence of pre-detention process was remediated by the bond hearing. *See Saballos Rosales v. Noem*, No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that post-detention process is no substitute for the pre-detention process petitioner was owed); *Gudavasov v. Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient to remedy the denial of a petitioner's right to pre-deprivation process and ordering the petitioner's release); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); *see also Riveros-Sanchez v. City*

*of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.' " *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)).

For the above-stated reasons, the Court finds that Petitioner is entitled to release due to the violation of her procedural due process rights.

**IV. Order**

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that Judgment be entered granting the Petition as to Count One for the reasons set forth above, and count two and three are dismissed without prejudice.

Petitioner Chuchu Yao (A# 216-871-100) is **ordered released** within 24 hours of this Order on reasonable conditions of supervision. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from her, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) the return to Petitioner of her personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATE: November 25, 2026

Patricia Donahue
United States Magistrate Judge